**So Ordered.**



_Frederick P. Corbit_
Frederick P. Corbit
Bankruptcy Judge

**Dated: September 25th, 2014**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>BRYAN CHARLES COONFIELD and ANNETTE ELIZABETH COONFIELD,<br><br>Debtors. | Case No. 14-02533-FPC13<br><br>**MEMORANDUM DECISION** |

## I.  BACKGROUND

In 2008, Bryan and Annette Coonfield purchased a condominium located in Lake Bellevue Village. The condominium is subject to a recorded declaration that provides the Lake Bellevue Village Homeowners Association with a lien for any unpaid homeowner assessments and is subject to a deed of trust securing a mortgage loan held by Bank of America, N.A. In December of 2012, Mr. and Mrs. Coonfield abandoned the condominium and stopped paying assessments to the Homeowners Association. However, Mr. and Mrs. Coonfield still hold legal title to the condominium because neither the Homeowners Association nor Bank of America have foreclosed.

MEMORANDUM DECISION ~ Page 1

In July of 2014, Mr. and Mrs. Coonfield filed a petition under chapter 13 of the Bankruptcy Code and proposed a plan that provides for the transfer of the condominium's title to Bank of America[1] and omits any provision for payment of ongoing assessments made by the Homeowners Association. Both Bank of America and the Homeowners Association object to the proposed transfer of title and the Homeowners Association further objects to the absence of a provision for the payment of ongoing condominium assessments.[2]

## II. ISSUES

The issues resulting from the two objections are:

1. Whether the debtors can force Bank of America to accept title; and

2. If not, whether the debtors' plan can be confirmed if it does not provide for the payment of ongoing assessments.

---

[1] Section VIII of the debtors' plan contains the following provision:

> All collateral surrendered in paragraph III.A.4.b. [including the condominium] is surrendered in full satisfaction of the underlying claim(s). Pursuant to 1322(b)(8) and (9), title to the property located at 4 Lake Bellevue Drive Unit #209, Bellevue, Washington 98005, shall vest in Bank of America upon confirmation, and the Confirmation Order shall constitute a deed of conveyance of the property when recorded. All secured claims secured by Debtor's property located at 4 Lake Bellevue Drive Unit #209, Bellevue, Washington 98005 will be paid by the surrender of the collateral and foreclosure of the security interests.

[2] The debtors' budget allows for, and the debtors' plan provides for, the payment of $1,000 per month for thirty-six (36) months. If the debtors are required to pay the current monthly assessment of $525.84, the amount available for distribution to all creditors under the plan would be reduced.

## III. DISCUSSION

A. <u>The Debtors Cannot Force the Transfer of Title</u>.

Bank of America and the Homeowners Association correctly assert that Mr. and Mrs. Coonfield cannot force Bank of America to accept title to the condominium. In Washington, to complete a transfer of real property, the transferee must accept the transfer.[3] Here, where Bank of America is unwilling to accept the proposed transfer, the debtors cannot force the lender to take title. Nonetheless, as discussed below, Mr. and Mrs. Coonfield need not divest themselves of legal title to avoid personal liability for ongoing assessments.

B. <u>Ongoing Association Assessments are Dischargeable</u>.

The Homeowners Association cites *Foster v. Double R Ranch Association*, a decision rendered by the Ninth Circuit Bankruptcy Appellate Panel, as authority for the proposition that Mr. and Mrs. Coonfield's chapter 13 plan must provide for ongoing assessments to the Homeowners Association so long as the Coonfields hold title to the condominium.[4] The *Foster* court addressed a situation where a debtor

---

[3] *See*, *e.g.*, 17 WILLIAM B. STOEBUCK AND JOHN W. WEAVER, REAL ESTATE: PROPERTY LAW, WASHINGTON PRACTICE SERIES, at 497 (2d. ed. 2004). "Theoretically, a deed is not effective until it is 'accepted' by the grantee."

[4] *See Foster v. Double R Ranch Ass'n (In re Foster)*, 435 B.R. 650 (B.A.P. 9th Cir. 2010). The Homeowners Association argues that the ruling in *Foster* extends to all situations where a debtor retains a "legal, equitable or possessory interest" in a condominium unit. *Id.* at 661. The language relied on by the Homeowners Association and quoted from *Foster* is lifted from paragraph (16) of 11 U.S.C. § 523(a) which specifically excepts debts for ongoing association assessments from discharge under "section 727, 1141, 1228(a), 1228(b), [and] 1328(b)." However, the exception set

MEMORANDUM DECISION ~ Page 3

14-02533-FPC13    Doc 39    Filed 09/25/14    Entered 09/25/14 13:14:29    Pg 3 of 11

continued to reside in his condominium and had no intention to surrender it.[5] Based on those facts, the Bankruptcy Appellate Panel imposed a rule that it descriptively entitled: "you stay, you pay."[6] Given that Mr. Foster continued to enjoy the benefits of ownership, this court finds the *Foster* ruling compelling on equitable grounds. However, the facts here are distinct in a critical respect.

In cases such as this one, where chapter 13 debtors have surrendered all interests in a condominium but still hold bare legal title, courts are split on whether ongoing assessments are dischargeable under 11 U.S.C § 1328(a). Those courts that comport with the Homeowners Association's view assert that assessments are a result of covenants running with the land and conclude that ongoing assessments are non-dischargeable.[7] In contrast, other courts view the obligations as flowing from contract and conclude that they are dischargeable.[8] While both approaches establish

---

forth in section 523(a) does not include section 1328(a) – the discharge provision relevant to this case.

[5] Courts have distinguished *Foster* from situations, like this one, where debtors have surrendered the condominium. *See, e.g.*, *In re Colon*, 465 B.R. 657 (Bankr. D. Utah 2011).

[6] *Foster*, 435 B.R. at 661.

[7] *See, e.g.*, *Foster* and *River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833 (4th Cir. 1994).

[8] *See, e.g.*, *In re Rosteck*, 899 F.2d 694 (7th Cir. 1990).

the existence of an obligation, neither appropriately addresses whether such obligations are dischargeable.[9]

To resolve the issue of whether Mr. and Mrs. Coonfield must include ongoing association assessments in their plan, the court must determine whether the assessments are a debt owed to the Homeowners Association as contemplated by the discharge provision under 11 U.S.C. § 1328(a). If so, then the assessments are dischargeable – if not, Mr. and Mrs. Coonfield remain personally liable and must provide for the assessments in their plan.

To begin the analysis, the court looks to the language contained in the discharge provision under 11 U.S.C. § 1328(a) which states ". . . the court shall grant the debtor a discharge of all *debts* . . ." (emphasis added) with certain exceptions inapplicable here. Section 101(12) of the Bankruptcy Code defines "debt" as a "liability on a claim." In turn, section 101(5)(A) defines "claim" as "[a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable,

---

[9] "The 'right to payment' described under § 101(5) does not depend upon a contractual arrangement between the parties." *In re Mattera*, 203 B.R. 565, 571 (Bankr. D. N.J. 1997) (citing *Ohio v. Kovacs*, 469 U.S. 274, 279-281, 105 S. Ct. 705, 708, 83 L.Ed.2d 649 (1985)).

secured, or unsecured." As the Supreme Court noted, "Congress chose expansive language in both definitions."[10]

In light of these broad characterizations, it appears that the terms necessarily encompass the obligation at issue here. The Homeowners Association possesses its claim by virtue of Mr. and Mrs. Coonfield acquiring title to the condominium and subsequent assessments are a consequence of, and mature from, the act that gave rise to such claim. Thus, absent the debtors' pre-petition act of taking title, the Homeowners Association would not have a claim. As correctly noted by one court, obligations to Homeowners Associations "are a pre-petition claim because they arose upon the Debtor taking title to the property, which occurred pre-petition. The post-petition assessments that are at issue here are merely the 'contingent', 'unmatured' portion of that prepetition claim."[11] Thus, this court concludes that the claim against Mr. and Mrs. Coonfield for association assessments arose pre-petition and includes obligations for ongoing assessments.[12]

---

[10] *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 110 S. Ct. 2126, 2130, 109 L.Ed.2d 588 (1990), superseded by statute, Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, 104 Stat. 2865, as recognized in *Johnson v. Home State Bank*, 501 U.S. 78 (1991) (citing H.R. Rep. No. 95-595, at 309, U.S. Code Cong. & Admin. News 1978, p. 6266 (describing definition of "claim" as "broadest possible" and noting that the Bankruptcy Code "contemplates that all legal obligations of the debtor … will be able to be dealt with in the bankruptcy case"); *accord* S. Rep. No. 95-989, at 22, U.S. Code Cong. & Admin. News 1978, p. 5808).

[11] *In re Hawk*, 314 B.R. 312, 316 (Bankr. D. N.J. 2004) (quoting *Mattera*, 203 B.R. at 571).

[12] This conclusion would be different if this court was confronted with facts similar to those in *Foster*. Simply because the obligations at issue are dischargeable under section 1328(a), does not

MEMORANDUM DECISION ~ Page 6

14-02533-FPC13    Doc 39    Filed 09/25/14    Entered 09/25/14 13:14:29    Pg 6 of 11

The express language contained in 11 U.S.C. § 523(a) leads to the same conclusion. By its terms, the discharge exceptions under section 523(a) do not apply to section 1328(a) – the discharge provision relevant here; however, section 523(a) remains relevant to section 1328(a) for other reasons. Section 523(a) states that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any *debt*–" (emphasis added) and goes on to list several debts excepted from discharge, including debts for ongoing association assessments under paragraph (16). By including association assessments on this list, Congress not only explicitly identified these obligations as "debts" that give rise to "claims" by operation of section 101(5), but, as a corollary, identified them as dischargeable absent a specific exception.[13] In light of Congress' designation, such debts are dischargeable under 11 U.S.C. § 1328(a).

---

lead to debtors receiving a free ride if they continue to benefit from the property. Personal liability for ongoing assessments may arise on theories of unjust enrichment, quantum meruit, or implied contract. *See*, *e.g.*, *Mattera*, 203 B.R. at 572. Further, this court's holding leaves property interests intact. The Homeowners Association and Bank of America may pursue their *in rem* state law remedies. *See Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 531 (9th Cir. 1998) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150, 2153, 115 L.Ed.2d 66 (1991)). Finally, to the extent this court's conclusion differs from *Foster*, the Ninth Circuit Court of Appeals has not determined that the Bankruptcy Appellate Panel's decisions are binding on bankruptcy courts in the circuit as a whole. *See State Comp. Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1005 n. 1 (9th Cir. 2010) (citing *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990)).

[13] Congress has remained faithful to the manner in which claims are determined. While the substance of a claim is determined by state law, "[t]he question of when a debt arises under the bankruptcy code is governed by federal law." *Siegel*, 143 F.3d at 532 (quoting *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929 (9th Cir. 1993)). ("The determination of when a

A contrary interpretation of the law divests 11 U.S.C. § 523(a)(16) of significance. If personal liability on such obligations arise post-petition as the Homeowners Association urges, section 523(a)(16) is rendered meaningless and simply restates a principle already infused in bankruptcy law; i.e., that a right to payment arising post-petition is not subject to discharge. This deduction is consistent with the Supreme Court's conclusion in *Pennsylvania Department of Public Welfare v. Davenport*. Holding that criminal restitution obligations excepted from discharge under section 523(a)(7) fall within the Code's definition of "debt," the Court reasoned that:

> Had Congress believed that restitution obligations were not "debts" giving rise to "claims," it would have had no reason to except such obligations from discharge in § 523(a)(7). . . . [I]t would be anomalous to construe "debt" narrowly so as to exclude criminal restitution orders. Such a narrow construction of "debt" necessarily renders § 523(a)(7)'s codification of the judicial exception for criminal restitution orders mere surplusage. Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment.[14]

It is instructive that Congress ultimately negated the outcome of *Davenport* by enacting specific discharge exceptions rather than by narrowing the definition of the

---

claim arises for purposes of bankruptcy law should be a matter of federal bankruptcy law . . . .'"); (quoting *Corman v. Morgan (In re Morgan)*, 197 B.R. 892, 896 (N.D. Cal. 1996) (finding that determination of when a claim arises under the bankruptcy code should be governed by federal law), *aff'd*, 131 F.3d 147 (9th Cir. 1997); (quoting *Cohen v. N. Park Parkside Cmty Ass'n (In re Cohen)*, 122 B.R. 755, 757 (Bankr. S.D. Cal. 1991) ("However, federal bankruptcy law, rather than California state law, governs when a debt arises for purposes of determining dischargeability.")

[14] *Davenport*, 495 U.S. at 562.

terms "claim" or "debt." As such, *Davenport* remains controlling as the Supreme Court confirmed in *Johnson v. Home State Bank*:

> Congress subsequently overruled the result in *Davenport* . . . . It did so, however, by expressly withdrawing the Bankruptcy Court's power to discharge restitution orders under 11 U.S.C. § 1328(a), not by restricting the scope of, or otherwise amending, the definition of "claim" under § 101(5). Consequently, we do not view the [change] as disturbing our general conclusions on the breadth of the definition of "claim" under the Code.[15]

Interpreting 11 U.S.C. § 523(a)(16) as this court has done not only confers distinct meaning on the provision but, as a matter of context, is supported by the fact that each discharge exception contained in section 523(a) addresses a debt giving rise to a claim that, absent a specific discharge exception, is dischargeable – for example, debts incurred by fraud, domestic support obligations, educational benefits, etc. This interpretation is further supported by Congress' specificity in sections 523(a) and 1328(a). Section 523(a) excepts the enumerated debts from "discharge

---

[15] *Johnson v. Home State Bank*, 501 U.S. 78, 83 n. 4, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991). *See also* 2 Collier on Bankruptcy ¶ 101.05[3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). "The *Davenport* decision reinforces the statute's intended effect to define the scope of the term 'claim' as broadly as possible . . . . It can be expected that in light of *Davenport* the courts will rebuff virtually all attempts to characterize obligations as outside the scope of the definition due to 'special' or unique characteristics of those obligations. Although Congress, in two separate acts, (footnote omitted) amended Code section 1328(a) to make certain criminal restitution debts nondischargeable in chapter 13 cases, thus reversing the result in *Davenport*, it did nothing to change the definition of claim or to disturb the Supreme Court's holding regarding the scope of that definition. Therefore, the broad scope of the term "claim" described in *Davenport*, including obligations for criminal restitution, continues to be law."

under section 727, 1141, 1228(a), 1228(b), or 1328(b)."[16] Likewise, paragraph (2) of section 1328(a) excepts any "debt" from discharge "of the kind specified . . . in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)." If Congress intended to categorically except debts for ongoing association assessments from discharge it would have said so.

C. <u>Chapter 13 Provides for a Broad Discharge</u>.

Allowing for the discharge of the obligations at issue is consistent with the principles underlying a chapter 13 discharge and reflects the execution of Congress' policy that such a discharge should furnish broader relief. Again, the Supreme Court in *Davenport* addressed this stating:

> Congress defined "debt" broadly and took care to except particular debts from discharge where policy considerations so warranted. Accordingly, Congress secured a broader discharge for debtors under Chapter 13 than Chapter 7 by extending to Chapter 13 proceedings some, but not all, of § 523(a)'s exceptions to discharge. See 5 Collier on Bankruptcy ¶ 1328.01 [1][c] (15th ed. 1986) ("[T]he dischargeability of debts in chapter 13 that are not dischargeable in chapter 7 represents a policy judgment that [it] is preferable for debtors to attempt to pay such debts to the best of their abilities over three years rather than for those debtors to have those debts hanging over their heads indefinitely, perhaps for the rest of their lives") (footnote omitted). . . . Thus, to construe "debt" narrowly in this context would be to override the balance Congress struck in crafting

---

[16] Cases cited by the Homeowners Association are distinct from this case because the debtors in those cases were not seeking a discharge under section 1328(a). *See In re Rivera*, 256 B.R. 828 (Bankr. M.D. Fla. 2000) (the debtor filed a chapter 7 petition); *In re Burgueno*, 451 B.R. 1 (Bankr. D. Ariz. 2011) (the debtor filed a chapter 11 petition); *In re Ames*, 447 B.R. 680 (Bankr. D. Mass. 2011) (the debtor filed a chapter 7 petition).

the appropriate discharge exceptions for Chapter 7 and Chapter 13 debtors.[17]

### IV. CONCLUSION

The court sustains the objections brought by Bank of America and the Homeowners Association to the plan provision proposing a transfer of title. The court rejects the Homeowners Association's contention that Mr. and Mrs. Coonfield's plan must provide for the payment of ongoing assessments. The debtors may propose a revised plan in accordance with this decision.

///END OF MEMORANDUM DECISION///

---

[17] *Davenport*, 495 U.S. at 562-63.